UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRO ZHININ,<br><br>         Plaintiff<br><br>     v.<br><br>LAUREL HARRY, *et al.*,<br><br>         Defendants. | CIVIL ACTION NO. 3:25-CV-00223<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Sandro Zhinin, currently incarcerated at SCI-Benner Township, has filed a complaint alleging that six defendants are improperly excluding him from Native American religious ceremonies. Pursuant to 28 U.S.C. § 1915A, the Court will permit Zhinin to proceed on First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims, and dismiss all other claims.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On February 5, 2025, the Court received and docketed Zhinin's complaint against six defendants affiliated with SCI-Benner Township (Doc. 1), and his motion to proceed in forma pauperis (Doc. 2). On February 24, 2025, Zhinin filed an amended complaint, which is now the operative complaint. (Doc. 6); *see* Fed. R. Civ. P. 15(a)(1).

   A.   SWEAT LODGE CEREMONY

The complaint alleges as follows: Zhinin "is an avid practitioner of the Native American religion," which is one of nine religious groups recognized at SCI-Benner Township. For its adherents, the Sweat Lodge Ceremony "is a sacrament similar to a Christian baptism, confession, death/birth, and the like," which Zhinin believes prevents ill

health and "purifies" the participant for other ceremonies, among other benefits. The Sweat Lodge Ceremony "is such a central part of the religious belief and rites of tribes that it is inconceivable that an [I]ndian could practice his religious life in the traditional Indian way without access to a sweat lodge." (Doc. 6, ¶ 70 (external citation omitted)).

Zhinin alleges that under a prior settlement in federal court, the DOC "was to provide a build area for [a] Sweat Lodge" at SCI-Benner Township. Allegedly, the agreement contained a provision that "[i]f an inmate is not medically cleared he/she may not use the Sweat Lodge."[1] The agreement itself did not provide standards for medical clearance, and Zhinin alleges that there is no policy accessible to inmates that would explain the standards. Nonetheless, inmates asserting a religious entitlement to use the Sweat Lodge are required to sign a "Sweat Lodge MEMO of UNDERSTANDING" and "Notice of Sweat Lodge Danger & Acknowledgement, Waiver and Release Form." The inmate is then evaluated by medical staff, which "determine[s] which inmates are medically cleared to participate in the ceremony."

B. ZHININ'S SWEAT LODGE STATUS

On October 6, 2023, Zhinin was notified that he was "'not medically cleared' to participate in the Sweat Lodge." He raised the issue with Kim Ardery, a health care administrator, who advised him to speak to a medical provider using the sick call system. On

---

[1] Zhinin does not describe the conditions of the Sweat Lodge or the nature of the ceremony but appears to acknowledge at least some health risk. *See* (Doc. 6, ¶ 98) ("Volunteers and/or guests have entered the Sweat Lodge without medical evaluation through the traditional way of observation and precautions done by the person conducting the ceremony."). For context, the Court notes that prior cases involving sweat lodges have discussed the risk of heat-related injury or illness. *See, e.g.*, *Fowler v. Crawford*, 534 F.3d 931, 935 (8th Cir. 2008).

March 11, 2024, after repeated efforts to ascertain the reason for the lack of medical clearance, he spoke with Tiffany Sottily, a nurse practitioner employed by Wellpath, LLC ("Wellpath"), the prison medical provider. Sottily "stated that she used [Zhinin's] medical history of [borderline] cholestero[l], anxiety condition, and recent diagnosis of high blood pressure" to deny him medical clearance, and that Zhinin would "never be medically cleared," regardless of whether those conditions improved.[2] Meanwhile, two other Native American inmates with "prior and/or current conditions similar to" Zhinin's have been permitted to use the Sweat Lodge. Further, Zhinin regularly partakes in "rigorous and physically demanding" exercise without incident and without the need for medical clearance.

Zhinin alleges that he has suffered insomnia and weight gain from his inability to participate in the Sweat Lodge. He filed a grievance about his Sweat Lodge access, which was considered first by Ardery, on appeal by Superintendent Bradley Booher, and on final review by the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). Zhinin also alleges that other Native American inmates "informally notified" Booher of "their inability to practice their religion due to medical clearance denial." Nonetheless, Zhinin was denied relief at all levels. Moreover, Booher told two unnamed Native American inmates that "he would not allow anyone with prior or current medical condition(s) to go into the Sweat Lodge."

### C. TREATMENT OF NATIVE AMERICAN INMATES

Zhinin asserts that the medical clearance policy, as enforced, reflects discrimination by DOC and Wellpath employees against Native American inmates. For the September 21,

---

[2] Zhinin also alleges generally that the medical care provided by DOC staff and Wellpath "conflict[s] with procedure." As "examples," Zhinin describes "scheduling [him] for a medical assessment and never calling for him or a Provider ordering medication and Staff notifying [him] that the medication is not available."

3

2024, Sweat Lodge Ceremony at SCI-Benner Township, only two of 15 Native American religious inmates were permitted to enter. During five Sweat Lodge ceremonies between October 7, 2023, and December 14, 2024, "on average 80%" of eligible inmates were denied medical clearance. Meanwhile, unspecified "volunteers and/or guests" were permitted to enter the Sweat Lodge during these ceremonies without medical clearance, and the DOC does not require any other religious inmates to obtain medical clearance for their religious activities, such as fasting.

Zhinin further alleges a general campaign of "bias, intimidation and harassment" by officers, who are mostly "white Christian," toward non-white inmates. Specifically, he alleges the following incidents involving various SCI-Benner Township staff (none of whom are named as defendants):

- "[De]struction of religious property of non-white inmates," including Native American inmates, during a "shake down," and "throw[ing Zhinin's] books and papers throughout the floor" during the shake down;

- An unnamed correctional officer ("CO") "referred to the Sweat Lodge as a 'butt hut'";

- The Native American chaplain is "constantly disrespected by CO staff";

- CO staff do not use the public announcement system to advise Native American inmates of programs and services;

- Unnamed CO staff "ha[r]ass and intimidate medical personnel to disregard inmates that the COs dislike such as . . . individuals with sex offenses, non-whites, and non-Christian[s]";

4

- Unnamed CO staff "frequently harass[] and mistreat[]" Zhinin "based on his looks and/or because of his religious belief";

- An unnamed CO "slammed a door causing [a Hispanic] inmate to jump," and the officer joked that the inmate "thought ICE was coming to get him";

- An officer commented about an inmate nicknamed "Mexico": "Yes he's Mexican. He absolutely is Mexican. I know who you're talking about";

- Unnamed officers referred to Native American religious inmates as "playing Indian" or "do[ing] their Indian thing";

- An officer, "CO Kreisher," ordered a Native American inmate back to his cell during Native History Movie Night, purportedly for being improperly dressed, and refused to allow him back. When the inmate complained, Kreisher "replied with a loud 'woop' sound."

## II.  28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

5

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.  DISCUSSION**

Zhinin asserts First Amendment free exercise claims against all defendants; Fourteenth Amendment equal protection and due process claims against all defendants; RLUIPA claims against Ardery, Booher, Harry, and Medical Director Ronald Long; Eighth Amendment claims against Booher and Sottily; and medical negligence claims against Booher, Sottily, and Wellpath. He seeks monetary, declaratory, and permanent injunctive relief.

    A.  SECTION 1983

Zhinin's claims of constitutional violations fall under 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).

By this standard, Defendants Long and Wellpath are improperly named in his Section 1983 claims. The complaint contains no direct allegations against Long, the director of the DOC's Bureau of Health Care Services. A claim against Wellpath would be viable only to the extent that a Wellpath policy or custom caused the constitutional violation(s) alleged. *See*

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). However, the complaint does not point to any Wellpath policy that caused Zhinin to be denied medical clearance for the Sweat Lodge. To the contrary, Zhinin alleges that the judgments were made by individual health care providers and/or DOC employees. *See* (Doc. 6, ¶¶ 28-31 (Sottily "used [Zhinin's] medical history . . . to deny him to be medically cleared"), ¶ 55 (Booher "would not [clear] anyone with prior or current medical conditions")).

    B.  FIRST AMENDMENT/RLUIPA

Zhinin asserts First Amendment free exercise claims against all defendants, and violations of RLUIPA by Ardery, Booher, Harry, and Long.

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, a regulation limiting prisoners' religious exercise is constitutional if the record shows that it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000).

RLUIPA offers broader protection than the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015). The statute forbids the government from imposing "a substantial burden" on a prisoner's religious exercise unless the government "demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A substantial burden under RLUIPA exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion to receive a benefit; or (2) the government puts substantial pressure on an

9

adherent to substantially modify his behavior to violate his beliefs. *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Both the First Amendment and RLUIPA require that the beliefs in question are "sincerely held" and religious in nature. *See Holt*, 574 U.S. at 360-61.

Zhinin plausibly alleges that the denial of access to the Sweat Lodge is a restriction on the exercise of his sincerely held religious beliefs. The complaint indicates that defendants Sottily and Booher enforced a policy wherein inmates with a "history" of health conditions were permanently denied access to the Sweat Lodge regardless of whether those conditions were ameliorated. *See* (Doc. 6, ¶¶ 30, 55). From these allegations, it would be plausible to infer that the decision to deny Zhinin was not based on the legitimate penological interest of inmate health and safety, nor the least restrictive means of furthering that interest.

However, Zhinin has not plausibly alleged a First Amendment or RLUIPA claim against Ardery, Harry, or Long.[3] Ardery was allegedly involved in responding to his grievance, but that does not itself show personal involvement in the underlying violation. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Ardery's only other involvement was to direct Zhinin to the medical staff for inquiries about medical clearance, but that does not itself show acquiescence in illegal conduct. Similarly, nothing in the complaint supports Harry's personal involvement. Zhinin's bare allegation that Harry knew of "rules and policies brought forth by the Bureau of Standards and Security . . . for the Native American Sweat Lodge" (Doc. 6, ¶ 47) is insufficient, because there is no allegation that this entity was responsible for

---

[3] "[T]he same personal involvement analysis applied to [Zhinin's] free exercise claim can be applied to [his] RLUIPA claim." *Lapp v. Nye*, No. 1:23-CV-0419, 2024 WL 53017, at *7 (M.D. Pa. Jan. 4, 2024); *see also Jackmon v. New Jersey Dep't of Corr.*, No. CV 18-149 (KM) (SCM), 2020 WL 3496954, at *3 (D.N.J. June 29, 2020) ("The concept of 'personal involvement,' which generally applies to 42 U.S.C. § 1983 claims, also appears to extend to RLUIPA claims.") (listing cases).

the challenged policy or the way it was enforced. Accordingly, Zhinin may proceed on First Amendment claims against Sottily and Booher, and a RLUIPA claim against Booher only.

### C. FOURTEENTH AMENDMENT

Zhinin asserts Fourteenth Amendment equal protection claims based on all defendants' failure to allow him to enter the Sweat Lodge. Zhinin may state a claim by alleging intentional, differential treatment compared to similarly situated persons because of membership in a religious group. *See Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002). Persons are similarly situated "when they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted).

Zhinin asserts differential treatment of Native American and Muslim inmates in that Muslim inmates are not required to gain medical clearance to fast for religious reasons. However, the complaint provides no basis to infer that the health risks of fasting are comparable to those of the Sweat Lodge Ceremony. Religious accommodations are generally not "similarly situated" if the accommodations they demand are substantively different. *See Small v. Sec'y Pennsylvania Dep't of Corr.*, 592 F. App'x 62, 64 (3d Cir. 2014) (Jewish and Muslim inmates seeking to fast were not similarly situated because "Ramadan is much longer, involves more logistical challenges, and ends with a communal feast"). Similarly, in the context of medical judgments, inmates must generally be facing similar medical risks to be similarly situated. *See, e.g.*, *Brown v. Beard*, 445 F. App'x 453, 456 (3d Cir. 2011) (affirming dismissal where a plaintiff with a hernia failed to identify "similarly situated inmates with a reducible hernia who were treated differently"). Moreover, Zhinin has not plausibly alleged that the medical clearance policy was a result of discriminatory intent or purpose. Although the anti-Native American harassment Zhinin ascribes to various officers is deplorable, none

11

of those individuals are alleged to have any connection to medical clearances or any control over Zhinin's access to the Sweat Lodge.

Zhinin also asserts a Fourteenth Amendment due process claim premised on the absence of a "standard of medical clearance" or a "fair or impartial decision-making process." Zhinin must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property;' and (2) the procedures available to him did not provide 'due process of the law.'" *Hill v. Borough of Kutztown*, 445 F.2d 225, 233–34 (3d Cir. 2006).[4] Because Zhinin was not deprived of life or property, he must show a liberty interest, which can be either an "independent due process liberty interest" or a "state-created liberty interest." *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). The former pertains to "severe changes in conditions of confinement," while the latter is impinged by "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, Zhinin has not pled a protected liberty interest. The denial of the Sweat Lodge (which he has never been permitted to use) does not represent a "severe change" in his conditions of confinement, and it is typical for inmates to be denied certain facilities and religious activities for safety or other institutional concerns[5], even if the inmate believes the

---

[4] The Court construes Zhinin's claim as a procedural due process claim rather than a substantive due process claim, but neither claim would be viable based on Zhinin's failure to plead a protected liberty interest.

[5] *See Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (discontinuation of kosher meals was not an atypical or significant hardship); *Talbert v. Carney*, No. CV 18-1620, 2018 WL 3520676, at *3 (E.D. Pa. July 20, 2018) ("Imprisonment will impose restrictions on the exercise of religion by necessity. A prisoner must have reasonable opportunity to exercise
*(footnote continued on next page)*

risk of harm is remote. Moreover, while Zhinin objects to the ultimate decision, it is not clear that the procedure itself was inadequate. "The essential requirements of any procedural due process claim are notice and the opportunity to be heard," *Zappan v. Pennsylvania Bd. of Prob. & Parole*, 152 F. App'x 211, 220 (3d Cir. 2005), both of which were ultimately afforded to Zhinin.[6]

### D. Eighth Amendment

Next, Zhinin claims that his exclusion from the Sweat Lodge violated his Eighth Amendment right against cruel and unusual punishment. However, to state such a claim, he would have to allege that he was denied "the minimal civilized measure of life's necessities" such that he was at "a substantial risk of serious harm," and that the defendants were deliberately indifferent to that risk. *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Zhinin alleges, and the Court assumes as true for pleading purposes, that he suffered insomnia and weight gain because he was denied access to the Sweat Lodge. But although Zhinin ultimately sustained physical harm, there was no basis for any defendant to infer an objective, substantial risk of harm merely because

---

their religion, but is not guaranteed a special place of worship.") (citations omitted); *Ellis v. United States*, No. CIV A 06-305, 2009 WL 440390, at *12 (W.D. Pa. Feb. 23, 2009) ("Plaintiff does not have either a property or liberty interest in receiving a ceremonial feast [for Islamic holy days]."); *Muslim v. Frame*, 891 F. Supp. 226, 234 (E.D. Pa. 1995) (restriction on Muslim inmate wearing a kufi was not atypical of prison life).

[6] Zhinin faults the DOC for failing to publish a policy that explains the specific standards for medical clearance, but case law suggests that prisons need not preemptively explain their criteria for medical judgments in that level of detail. *See, e.g.*, *Reynolds v. Wagner*, 128 F.3d 166, 177 (3d Cir. 1997) (rejecting claims that inmate handbook did not adequately define "chronic illness" or "emergency").

he was denied access to the Sweat Lodge, nor is there any allegation that defendants subjectively perceived such a risk.

    E. NEGLIGENCE

Finally, Zhinin asserts claims of negligence against Booher, Sottily, and Wellpath, but the basis for these claims is unclear. He asserts that these defendants were "[n]egligent in providing medical care," but the complaint lacks specific allegations[7] of inadequate medical care. The Court infers that Zhinin's claim is premised on the allegedly improper review of his medical clearance, and therefore sounds in ordinary negligence. *See Holton v. United States*, No. 4:22-CV-487, 2024 WL 2094014, at *2 (M.D. Pa. May 9, 2024) (listing cases); *Medley v. United States*, No. 1:15-CV-1261, 2016 WL 3913575, at *7 (M.D. Pa. Apr. 6, 2016) (claim premised on "administrative" error in inmate placement sounded in ordinary negligence), report and recommendation adopted, 2016 WL 3908400 (M.D. Pa. July 19, 2016). Zhinin must allege a duty of care, a breach of that duty that proximately caused harm, and damages suffered as a direct result of that harm. *See Ortiz v. United States,* No. 1:23-cv-00203, 2024 WL 1620790, at *19 (M.D. Pa. Apr. 15, 2024) (citing *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019)).

Even assuming the denial of access to the Sweat Lodge breached a duty to Zhinin, he has not stated a negligence claim, because he has not shown how it was reasonably foreseeable that he would develop physical injuries from being unable to participate in a religious

---

[7] Zhinin's allegations that "DOC staff and medical provider[s] conflict with procedure" by failing to call Zhinin for appointments and prescribing medicine that is unavailable, and that "there are a number of lawsuits that show medical avoidance or negligence to help inmates with their medical needs," (Doc. 6, ¶¶ 89-90), do not show negligence by any particular defendant, nor that Zhinin suffered harm from any alleged errors.

ceremony. *See Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 250 (Pa. Super. Ct. 2014) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act."); *see also White v. United States*, No. 3:20-CV-00291, 2025 WL 697198, at *7 (M.D. Pa. Mar. 4, 2025) ("[E]ven assuming the disputed conditions of confinement at USP Canaan were exactly as White describes them, it was simply not foreseeable to prison officials that their conduct—if negligent—would create an unreasonable risk of causing a prisoner emotional distress so severe that it would result in bodily injury. Although such a unique injury may be remotely possible, it is not the natural, probable, or foreseeable consequence of the purportedly negligent conduct which White alleges.") (quotations and citations omitted).

## IV.   CONCLUSION

The Court will grant Zhinin's motion to proceed *in forma pauperis* (Doc. 2), grant him leave to proceed on First Amendment and RLUIPA claims, and dismiss all other claims. An appropriate Order follows.

Dated: March 28, 2025                                      *s/ Karoline Mehalchick*
                                                                              **KAROLINE MEHALCHICK**
                                                                              **United States District Judge**