UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRO ZHININ,<br><br>　　　　　　Plaintiff<br><br>　v.<br><br>BRADLEY BOOHER, *et al.*,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 3:25-CV-00223<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Defendant Tiffany Sottile[1] moves to dismiss Plaintiff Sandro Zhinin's First Amendment claim against her. (Doc. 17). Because the motion relies on documents extrinsic to the complaint, the parties will be given additional time to present all relevant evidence and argument, *see* Fed. R. Civ. P. 12(d), and the case will proceed to discovery.

**I.　BACKGROUND AND PROCEDURAL HISTORY**

Zhinin has been permitted to proceed on First Amendment claims against Sottile and Bradley Booher, and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Booher. *See* (Doc. 8). As relevant to this motion[2], the operative complaint (Doc. 6) alleges as follows:

Zhinin, a prisoner at SCI-Benner Township, "is an avid practitioner of the Native American religion." In this religion, the Sweat Lodge Ceremony "is a sacrament similar to a Christian baptism, confession, death/birth, and the like." The prison provides a Sweat Lodge,

---

[1] Sottile is named as "Sottily" in the amended complaint.

[2] The complaint is more fully summarized in the Court's March 28, 2025, memorandum screening this case pursuant to 28 U.S.C. § 1915A. (Doc. 7).

but prisoners' ability to use the Sweat Lodge is subject to medical clearance.[3] The prison medical staff determines which inmates are medically cleared to participate in the ceremony, although the standards for medical clearance are unknown to Zhinin.

On October 6, 2023, Zhinin was notified that he was not medically cleared to participate in the Sweat Lodge. On March 11, 2024, after repeated efforts to ascertain the reason for the lack of medical clearance, he spoke with Sottile. Sottile allegedly "stated that she used [Zhinin's] medical history of [borderline] cholestero[l], anxiety condition, and recent diagnosis of high blood pressure" to deny him medical clearance, and that Zhinin would "never be medically cleared," regardless of whether those conditions improved. Moreover, Booher allegedly told two unnamed Native American inmates that "he would not allow anyone with prior or current medical condition(s) to go into the Sweat Lodge." Nonetheless, two Native American inmates with "prior and/or current conditions similar to" Zhinin's have been permitted to use the Sweat Lodge.

Zhinin regularly engages in "rigorous and physically demanding" exercise without incident and without the need for medical clearance, and he alleges that his health conditions do not justify exclusion from the Sweat Lodge. In addition to monetary, declaratory, and nominal relief against all defendants, Zhinin specifically requests a permanent injunction ordering Booher[4] to "provide [inmates] the option of signing a Release of Responsibility Form, or the like" in lieu of medical clearance.

---

[3] Zhinin does not describe the conditions of the Sweat Lodge or the nature of the ceremony at the prison, but the Court has noted that other cases involving sweat lodges have discussed the risk of heat-related injury or illness. *See* (Doc. 7 at 2, n.1).

[4] The complaint requested the same injunctive relief from defendants Laurel Harry and Ronald Long, but those defendants have been dismissed.

## II.    LEGAL STANDARDS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.   DISCUSSION**

　　A.   FAILURE TO STATE A CLAIM

Sottile argues that the First Amendment claim against her must be dismissed because the complaint shows that she denied Zhinin's medical clearance on medical grounds. A prison official may legitimately restrict an inmate's First Amendment rights, including the right to freedom of religion, if the restriction is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000). Whether a restriction is "reasonably related" to a legitimate interest is a fact-based inquiry that requires courts to weigh four factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this

> connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Waterman v. Farmer,* 183 F.3d 208, 213 (3d Cir. 1999) (quoting *Turner,* 482 U.S. at 89-91) (quotation marks omitted). An assessment of these factors generally requires "a contextual, record-sensitive analysis." *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002) (quoting *DeHart,* 227 F.3d at 59 n.8).

Here, Zhinin alleges that the medical clearance process was arbitrary and not genuinely based on prisoner safety[5]. Zhinin alleges that Sottile told him he would "never be medically cleared," regardless of any future improvement in his condition. Defendant Booher allegedly told two inmates that he would not allow anyone with "prior or current medical condition(s)" to use the Sweat Lodge, but inmates with "similar" conditions to Zhinin's were allegedly permitted to use it.

Sottile argues that the Sweat Lodge would be "life threatening" for Zhinin because he "suffers from high blood pressure and anxiety," but that disputed conclusion cannot be assumed at the pleading stage. Moreover, the potential danger to Zhinin would not itself show that Sottile refused clearance for that reason, or that the medical clearance policy was reasonably related to legitimate penological interests. The motion does not address, for example, whether plausible modifications to the Sweat Lodge procedures or the medical

---

[5] Prisoner safety is, self-evidently, a legitimate penological interest. *See Jones v. Brown,* 461 F.3d 353, 364 (3d Cir. 2006).

5

clearance process could accommodate prisoners' religious rights. Accordingly, Sottile is not entitled to dismissal on this ground.

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Next, Sottile argues that Zhinin's claim must be dismissed because he failed to exhaust administrative remedies. Generally, a complaint is not deficient because of a plaintiff's failure to plead exhaustion of administrative remedies. See *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."). Sottile's request is premised on documents external to the complaint, including a declaration from a Pennsylvania Department of Corrections ("DOC") employee. In these circumstances, "the motion must be treated as one for summary judgment under Rule 56," and the parties must be given a "reasonable opportunity" to present all relevant material. Fed. R. Civ. P. 12(d); *see*, *e.g.*, *Breeland v. Baker*, 439 Fed.Appx. 93, 94-95 (3d Cir. 2011) ("[I]n order to consider [the DOC employee's]'s verification . . . the court would have to convert [the] Rule 12(b)(6) motion into one for summary judgment."). The Court will address the parties' arguments, but provide a final opportunity to present any further evidence and argument, with the full understanding that the motion is converted to a request for summary judgment. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287-88 (3d Cir. 1999) (the parties must have "adequate notice of the district court's intention to convert" the motion).

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural

6

rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). As relevant here, the DOC prescribes the following requirements for grievances:

> 11. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
> b. The inmate shall identify individuals directly involved in the event(s).
>
> c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
> d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

(Doc. 18-3 at 7 (DC-ADM 804 § 1.A)).

Sottile's evidence indicates that Zhinin properly exhausted Grievance No. 1078906. *See* (Doc. 18-2). Therein, Zhinin complained that the DOC was refusing him access to the Sweat Lodge on the basis that he was not medically cleared. He specifically alleged that he "spoke with CRNP Sottil[e] about not being medically cleared." As relief, he requested that he be permitted to use the Sweat Lodge after signing a "Release from Responsibility," consistent with accommodations provided for other religions. He also "reserve[d] the right to litigate in: Federal, Commonwealth, Common Pleas Court." (Doc. 18-2 at 5).

Sottile seeks dismissal on the basis that Zhinin filed his grievance against the DOC specifically, not against Sottile. However, neither the grievance policy nor the PLRA requires

7

that a grievance be filed "against" a particular person.[6] The grievance policy requires the inmate to "identify individuals directly involved in the event(s)," which Zhinin did. Thus, to exhaust remedies on a particular issue, the grievance in question must "alert prison officials to a problem," but need not "provide personal notice to a particular official that [s]he may be sued." *See Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). It is true that Zhinin's grievance was directed to the refusal of "the DOC" to allow him to sign a waiver, rather than Sottile's specific finding that Zhinin was not medically cleared to use the Sweat Lodge. To the extent Sottile would argue that she was not sufficiently involved in the policies implicated by the grievance, that can be litigated at a later stage if evidence is presented to that effect. However, Sottile is not entitled to dismissal or summary judgment based on Zhinin's purported failure to adequately identify her in the grievance.

Next, Sottile argues that any claim for monetary damages must be dismissed because Zhinin did not specifically request monetary damages in the initial grievance. The only relief Zhinin specifically requested was that he be allowed to use the Sweat Lodge after signing a waiver, and even a liberal reading of his grievance and associated appeals does not suggest his intent to seek monetary damages against Sottile. *See* (Doc. 18-2). He stated that he reserved "the right to litigate" in court, but general reservations of rights do not satisfy the DOC's requirement to "request the specific relief sought," and therefore do not permit a plaintiff to seek money damages omitted from the initial grievance. *See Wright v. Fedder*, No. 2:23-CV-

---

[6] The grievance form itself does not prompt the prisoner to identify a respondent or the person who is ultimately culpable; it instructs the prisoner to provide a "brief, clear statement" of the grievance and "list actions taken and staff you have contacted." *See* (Doc. 18-2 at 5).

8

5099, 2025 WL 2825588, at *6-7 (E.D. Pa. Oct. 3, 2025) (the phrase "I reserve all rights and remedies" was insufficient to allow a plaintiff to seek monetary relief) (listing cases); *see also* Johnson v. Wireman, 809 F. App'x 97, 99 (3d Cir. 2020) (prisoner who requested "immediate accommodation of my religious practice" and "whatever relief may be available under law" did not exhaust a claim for money damages). Thus, on the evidence and argument presented, Sottile would be entitled to summary judgment on Zhinin's claims against her for monetary damages.

Sottile argues, without citation to authority, that "Zhinin's failure to request monetary relief precludes his case from going forward." Zhinin's claim for injunctive relief can proceed because he specifically requested injunctive relief in his grievance[7], but that claim is not explicitly pled against Sottile. *See* (Doc. 6 at 27, ¶ 131). The grievance contains no apparent reference to declaratory relief, so that claim would be subject to summary judgment. *See, e.g.*, Gentilquore v. Bailey, No. 1:23-CV-1034, 2025 WL 861396, at *6 (M.D. Pa. Mar. 19, 2025) ("Gentilquore cannot pursue . . . any type of declaratory or injunctive relief that he did not request in his initial grievance."). On this record, neither claim would be viable against Sottile.

However, Sottile explicitly requests nominal damages against all defendants. (Doc. 6 at 27, ¶ 132). Because nominal damages do not need to be alleged in the complaint, *see* Mitchell v. Horn, 318 F.3d 523, 533 n.8 (3d Cir. 2003), "it is unclear whether a request for nominal damages must be administratively exhausted." Lee-Chima v. Hughes, No. 1:20-CV-2349, 2025 WL 778060, at *8 n.6 (M.D. Pa. Mar. 11, 2025); *see also* Jackson v. Mason, No. 1:22-CV-00845, 2025 WL 2809344, at *17 n.14 (M.D. Pa. Sept. 30, 2025). It appears that if the claim is viable,

---

[7] *See, e.g.*, Hobson v. Tiller, No. 1:18-CV-00233-SPB-RAL, 2021 WL 2191282, at *8 (W.D. Pa. May 6, 2021).

Zhinin may proceed against Sottile for nominal damages only.[8] The parties may specifically address these issues in supplemental filings.

## IV. CONCLUSION

Accordingly, Sottile's request for dismissal based on the sufficiency of the complaint will be denied. Her motion will be converted to a motion for summary judgment, and will remain pending, while the parties receive the required "opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In the meantime, the case will proceed to discovery. An appropriate order follows.

Dated: October 31, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[8] *See Quinn v. Tritt*, No. 3:18-CV-632, 2019 WL 4750312, at *2 (M.D. Pa. Sept. 30, 2019); *Boyce v. Dep't of Corr.*, No. 3:15-CV-157, 2016 WL 11184216, at *3-4 (W.D. Pa. Dec. 12, 2016), report and recommendation adopted, 2017 WL 499086 (W.D. Pa. Feb. 7, 2017); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) (nominal damages can satisfy the redressability element of Article III standing).